UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

FRANK LOUIS WATSON,

        Plaintiff,                        Case No. 2:12-cv-259

v.                                             Honorable R. Allan Edgar

MICHAEL W. CURLEY, et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* without immediate payment of an initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Frank Louis Watson, an inmate at the Baraga Maximum Correctional Facility (AMF), filed this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Warden Michael W. Curley, Resident Unit Manager William Jondreau, Assistant Resident Unit Supervisor J. LeClaire, Corrections Officer Unknown Tollefson, Corrections Officer Kevin Hemmila, Corrections Officer Unknown Goodreau, Corrections Officer Unknown LaChance, Corrections Officer Andy Hill, Corrections Officer Unknown Holma, Corrections Officer J. Karppinen, Corrections Officer Unknown Redinger, Corrections Officer Unknown Lapointe, Corrections Officer Unknown Brommenshenkel and Assistant Resident Unit Supervisor Scott E. Dewar.

Plaintiff asserts that from February 8, 2012, to February 24, 2012, Defendants deliberately denied Plaintiff and other inmates in segregation housing unit 3 adequate heat. Plaintiff claims that for a period of 16 days, the temperature in his cell dropped to the point where he could see his breath and that he was awakened from sleep by the cold. Plaintiff also states that doing legal work was difficult because his hands would cramp from the cold. Plaintiff states that he asked Defendants Tollefson, Hemmila, Goodreau, LaChance, Hill, Holma, Redinger, Brommenshenkel, and Karppinen to turn up the heat and was told that it was hot in the hallway, so it could not be cold in Plaintiff's cell.

On February 22, 2012, Plaintiff asked Defendant Jondreau to turn on the heat and Defendant Jondreau stated that he would talk to staff. For several days Plaintiff asked Defendant Dewar to turn up the heat, but Defendant Dewar responded that it was hot in the hallway, so it could not be that cold in Plaintiff's cell. On February 24, 2012, Plaintiff asked Defendant LeClaire to turn the heat up, and Defendant LeClaire stated, "It is 70 degrees in here, it can't be cold in your cell."

Plaintiff told Defendant LeClaire that he was going to write a grievance on the inadequate heat and Defendant LeClaire told Plaintiff to make sure and put his name on it, so that he would not have to review the grievance. Later that day, Plaintiff asked Defendant Hemmila to turn on the heat and he responded that he could not because there was a budget crunch. On March 7, 2012, Plaintiff submitted a step II grievance appeal to Defendant Curley and asked him to personally come into to Plaintiff's cell, stand inside for 5 to 10 minutes with the door slightly closed, and to gauge the temperature. Defendant Curley merely affirmed the step I response without doing a proper investigation. Plaintiff asked Defendant Lapointe to turn on the heat, but Defendant Lapointe stated that it was hot on the other side of Plaintiff's door, so it could not be cold in Plaintiff's cell.

Plaintiff offers copies of his step I, II and III grievances, as well as the responses, to his complaint. The step I grievance response states:

> The grievant was interviewed on 2/29/12, to no resolve. According to multiple daily unit temperature checks recorded in the unit logbook, air temperature remains at an acceptable level. According to the unit logbook, the temperature inside of cell 3-125 was checked by [Resident Unit Officer] Tollefson at 0813 on 2/13/12, and resulted in a reading of 72.4 degrees, and cell 3-126 was checked by [Resident Unit Officer] LaChance at 0820 hours on 2/29/12, and resulted in a reading of 70.6 degrees. Both cells are in close vicinity to the grievant's cell, and these temperatures are considered an adequate comfort level per PD 03.03.130. Maintenance was initially called on 2/12/12, due to numerous prisoner complaints and maintenance staff continue [sic] to adjust the system to alleviate any problems. Unit staff did take steps to determine if unit cell temperatures were inadequate. Upon review I find no proof that constitutes a violation of PD 03.03.130. Staff will continue to monitor unit air temperatures.

(Docket #1-1, p. 1 of 8.)

The step II grievance response states:

> This investigator has reviewed the step one grievance and your appeal. The step one response is appropriate and responsive to your claim. Temperatures are checked and recorded several times per day and routinely meet required guidelines. A cell temperature check on your wing on 2/29/12 resulted in a reading of 70.6 [degrees], again well within required guidelines. Unit temperatures will continue to be checked and recorded on a daily basis. There is no evidence of any violations of PD *Humane Treatment and Living Conditions for Prisoners*. The step one response is supported here.

(Docket #1-1, p. 7 of 8.)

Finally, the step III grievance response states:

> Your Step III grievance, including any materials included with your appeal from Step II, has been fully reviewed and considered by the Grievance Section of the Office of Legal Affairs in accordance with PD 03.02.130, "Prisoner / Parolee Grievances." The response you received at Steps I and II reflects that your issue was in fact considered and appropriately investigated. As there is no additional information or basis found for relief at Step III, the Step II decision is upheld at Step III.

(Docket #1-1, p. 8 of 8.)

Plaintiff states that Defendants' conduct violated his rights under the Eighth and Fourteenth Amendments. Plaintiff seeks damages.

## **Discussion**

I.  Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

As noted above, Plaintiff asserts that Defendants' conduct violated his rights under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it

contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

An Eighth Amendment claim comprises objective and subjective components: (1) a sufficiently grave deprivation and (2) a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 1977 (1994); *Woods v. LeCureux,* 110 F.3d 1215, 1222 (6th Cir. 1997). A prison official cannot be found liable unless the official has acted with deliberate indifference; that is, the official must know of and disregard an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837; *see also Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991) (deliberate indifference standard

applies to all claims challenging conditions of confinement to determine whether defendants acted wantonly). The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. *Farmer*, 511 U.S. at 837. Thus, the mental state required for an Eighth Amendment claim is not actual intent, but something close to common-law recklessness. *Hubbert v. Brown*, Nos. 95-1983, 95-1988, 96-1078, 1997 WL 242084, at *5 (6th Cir. May 18, 1997) (relying on *Farmer*, 511 U.S. at 836 n.4.

The reason for focusing on a defendant's mental attitude is to isolate those defendants who inflict punishment. *Farmer*, 511 U.S. at 839. The deliberate indifference standard "describes a state of mind more blameworthy than negligence." *Id.* at 835; *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("conduct that does not purport to be punishment at all must involve more than the ordinary lack of due care for the prisoner's interests or safety"). As the Supreme Court explained:

> The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Farmer*, 511 U.S. at 837-38 (citations omitted). Thus, accidents, mistakes, and other types of negligence are not constitutional violations merely because the victim is a prisoner. *Acord v. Brown*, No. 93-2083, 1994 WL 679365, at *2 (6th Cir. Dec. 5, 1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Rather, what is required is a conscious disregard of a substantial risk of harm. *Farmer*, 511 U.S. at 839.

It is clear from the record in this case that Defendants investigated Plaintiff's (and other inmates') complaints of being cold and found that the temperature in the wing was consistently in the low 70s. Therefore, it does not appear that Defendants acted with deliberate indifference as required by the Eighth Amendment.

Moreover, Plaintiff fails to allege that he suffered any physical injury as a result of being in a cold cell for 16 days. Title 42 U.S.C. § 1997e(e) precludes any claim by a prisoner "for mental or emotional injury suffered while in custody without a prior showing of physical injury." The Sixth Circuit repeatedly has held that Eighth Amendment claims for monetary relief based on mental or emotional injury are precluded by § 1997e(e) absent a showing of physical injury. *See, e.g.*, *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008); *Merchant v. Hawk-Sawyer*, No. 01-6244, 2002 WL 927026, at *2 (6th Cir. May 7, 2002); *Garrison v. Walters*, No. 00-1662, 2001 WL 1006271, at *2 (6th Cir. Aug. 24, 2001); *Robinson v. Corrections Corp. of America*, No. 99-5741, 2001 WL 857204, at *1 (6th Cir. June 20, 2001); *Oliver v. Sundquist*, No. 00-6372, 2001 WL 669994, at *2 (6th Cir. June 7, 2001); *Williams v. Ollis*, Nos. 99-2168, 99-2234, 2000 WL 1434459 (6th Cir. Sept. 2000); *Raines-Bey v. Garber*, No. 99-1471, 2000 WL 658721, at *1 (6th Cir. May 12, 2000). Because Plaintiff does not allege that he suffered a physical injury, his claims for damages are properly dismissed.

In addition, the Substantive Due Process Clause does not provide any basis for relief. "A plaintiff asserting a substantive due process claim faces a virtually insurmountable uphill struggle. He must show that the government conduct in question was so reprehensible as to 'shock the conscience' of the court." *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 n.4 (6th Cir. 1995) (citing *Rochin v. California*, 342 U.S. 165 (1952)); *Mertik v. Blalock*, 983 F.2d 1353, 1367-68 (6th Cir.

1993)); *see also Hampton v. Hobbs*, 106 F.3d 1281, 1288 (6th Cir. 1997).  Generally, a false misconduct charge may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson,* 861 F.2d 943, 950 (6th Cir.1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999).  Here, however, Plaintiff states that he was kept in a cold cell for a period of 16 days due to Defendants' failure to actually check the temperature inside of his cell, instead of in the hallway and neighboring cells.  At most, this conduct constitutes negligence on the part of Defendants.  The alleged conduct alleged does not shock the conscience or constitute an egregious abuse of power.  Plaintiff therefore fails to state a substantive due process claim.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  12/3/2012                     */s/ R. Allan Edgar*
                                       R. Allan Edgar
                                       United States District Judge